UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Docket No. 2:25-cr- |
| EVELYN HERRERA, Defendant. | |

PLEA AGREEMENT

The United States of America, by and through the United States Attorney for the District of Vermont (hereafter "the United States"), and the Defendant, EVELYN HERRERA, agree to the following in regard to the disposition of pending criminal charges.

1. EVELYN HERRERA agrees to plead guilty to an Information, charging her with one count of Conspiracy to Pay Health Care Kickbacks, by paying kickbacks that resulted in claims for reimbursement being submitted to federal health care benefit programs, in violation of 18 U.S.C. § 371.



2. EVELYN HERRERA understands, agrees, and has had explained to her by counsel that the Court may impose the following sentence on her plea: up to 5 years of imprisonment, pursuant to 18 U.S.C. § 371; maximum three years of supervised release pursuant to 18 U.S.C. § 3583(b) and (e); greater of $250,000 fine, or twice the gross gain or twice the gross loss, pursuant to 18 U.S.C. § 3571(b)(3), (d); and a $100 special assessment, pursuant to 18 U.S.C. § 3013.

3. EVELYN HERRERA agrees to plead guilty because she is, in fact, guilty of the above crime.

4. EVELYN HERRERA stipulates to, agrees with, and admits the following facts:

a. **Relevant Entities and Parties**

i. Merida Medical Supplies Inc. ("Merida") was a durable medical equipment ("DME") company incorporated by EVELYN HERRERA on or about December 21, 2020, under the laws of Florida.

ii. Company-1 is a Florida limited liability company.

b. **Federal Health Care Benefit Programs**

iii. The Medicare Program ("Medicare") is a federally-funded program that provides free and below-cost health care benefits to people aged 65 years or older, the blind, and the disabled. The Centers for Medicare and Medicaid Services ("CMS") is responsible for the administration of Medicare.

iv. The Civilian Health and Medical Program for the Department of Veterans Affairs ("CHAMPVA") is a federally-funded program providing health care benefits to spouses, dependents, and survivors of Veterans who meet certain service-connected disability requirements. 

v. Medicare and CHAMPVA are health care benefit programs, as defined by Title 18, United States Code, Section 24(b).

vi. On or about January 27, 2021, EVELYN HERRERA signed a certification statement as part of Merida's enrollment application with the Medicare program. In doing so, EVELYN HERRERA attested that, among other things, she "agreed to abide by the Medicare laws, regulations and program instructions." She also attested that she "underst[ood] that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such

laws, regulations and program instructions []including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b) . . . ."

vii. On or about February 24, 2021, HERRERA signed a contract with an outside billing company on behalf of Merida. The contract provided that the outside billing company would regularly process claims it received from Merida.

c. **Bank 1 Account**

viii. On or about January 8, 2021, EVELYN HERRERA opened a deposit account in the name of Merida ("Bank 1 Account"). HERRERA was the only authorized signer on the Bank 1 Account. In the Bank 1 Account opening documentation, HERRERA identified herself as Merida's President and the "100.00" percent owner.

ix. On or about April 9, 2021, EVELYN HERRERA directed Medicare to deposit reimbursements for claims submitted into the Bank 1 Account.



d. **Payments to Company-1**

x. EVELYN HERRERA regularly made large payments from the Bank 1 Account to Company-1, using Direct Pay and wire transfers. The payments occurred approximately once per week from July 2021 to October 2022 and typically included a memo line, such as "for Leads the Week 03.14 to 03.18." For example, on or about July 21, 2021, HERRERA made a payment to Company-1 for $4,950, and on or about May 6, 2022, HERRERA made a payment to Company-1 for $27,500 with the notation "for Leads of Week 05.09 to 05.13."

xi. In total, from July 2021 to October 2022, HERRERA, through Merida, paid $932,800 to Company-1 from the Bank 1 Account.

xii. HERRERA, through Merida, characterized the payments using such terms as "advertising," "lead generation," and/or "marketing." In fact, the payments were illegal health care kickbacks in violation of 42 U.S.C. §§ 1320a-7(b)(1), and 1320a-7b(b)(2).

xiii. All of Merida's billed claims were illegally induced by health care kickbacks to Company-1. These claims included: (1) a claim for two wrist orthoses and two elbow orthoses submitted by Merida, directed by Herrera, on or about July 21, 2021 for D.B., a Medicare beneficiary residing in Orleans, Vermont; and (2) a claim for two knee braces, two suspension sleeves, and a back brace submitted by Merida, directed by Herrera, or on about May 13, 2022 for M.S., a Medicare beneficiary residing in Highgate Center, Vermont.

e.   **Merida Claims Summary**

xiv. Merida submitted claims for reimbursement for DME that was alleged to have been provided to approximately 2,330 Medicare beneficiaries throughout the United States, including to beneficiaries in Vermont. In total, Merida billed Medicare approximately $6.5 million in claims.

xv. Medicare, in fact, paid approximately $2.8 million for those claims.

xvi. Merida submitted claims for reimbursement for DME that was alleged to have been provided to approximately twenty-two (22) CHAMPVA beneficiaries throughout the United States. In total, Merida billed CHAMPVA approximately $61,000 in claims.

xvii. CHAMPVA, in fact, paid approximately $4,750 for those claims.

xviii. The funds Merida received from Medicare and CHAMPVA were deposited into the Bank 1 Account controlled by Herrera.

xix. Merida's claims were almost exclusively for billing of certain orthotics, or braces. Merida's billed claims often involved multiple braces on a single claim—such as double knee and/or double wrist braces, in addition to a back brace and/or suspension sleeves.

xx. In sum, EVELYN HERRERA, through Merida, caused false and fraudulent claims for orthoses to be submitted to Medicare and CHAMPVA for beneficiaries throughout the nation who never requested and frequently never received such items. The fraudulent claims include claims for the purported delivery of orthoses to Medicare beneficiaries R.Col., J.S., M.C., D.B., M.S., and R.Cou., all within the District of Vermont, between October 13, 2021, and July 21, 2022.

f. **Medicare Contractor Review and Notice of Exclusion**



xxii. Beginning in November 2021, shortly after Merida began submitting bills to Medicare, several Medicare administrative contractors ("MACs") identified concerns with Merida's billing practices. One such MAC was CGS.

xxiii. On or about November 25, 2021, CGS sent Merida a "Notice of Review – Targeted Probe and Educate." As part of that review, CGS sampled 40 claims submitted on Merida's behalf, in support of which Merida and/or Merida's billing company furnished purported medical records to CGS. These medical records were false and fraudulent. For example, physician notes for beneficiary

R.M. from the biller include a diagnosis for back pain and state: "USE BACK BRACE L0648 FOR THE NEXT 99 MONTHS TO REDUCE PAIN BY RESTRICTING MOBILITY OF THE TRUNK AND SUPPORT WEAK SPINAL AND/OR A DEFORMED SPINE." However, the records obtained directly from the provider did not include a diagnosis for back pain, did not refer to a back brace, and did not include the language quoted above.

xxiv.    On or about August 11, 2022, Medicare's Unified Program Integrity Contractor ("UPIC") for the Western Region issued a letter notifying Merida of its decision "to suspend . . . Medicare payments in all jurisdictions." The letter stated that the "suspension [was] based on credible allegations of fraud" that Merida "submitted claims for services that were not rendered or [were] medically unnecessary."

g.    **Financial Transactions**



xxv.    During the scheme, EVELYN HERRERA conducted financial transactions and attempted to conceal and disguise the source, origin, and control of the health care fraud proceeds generated by Merida.

xxvi.    For example, from December 2021 to August 2022, EVELYN HERRERA periodically transferred money from the Bank 1 Account to a cryptocurrency exchange ("Cryptocurrency Exchange 1"). In total, HERRERA transferred more than $300,000 in fraud proceeds to Cryptocurrency Exchange 1. EVELYN HERRERA converted the fraud proceeds to cryptocurrency in order to disguise the source, origin, and location of the fraudulently obtained funds.

xxvii. In addition, between March 2022 and February 2022, EVELYN HERRERA transferred approximately $125,000 in fraud proceeds via international wire transactions from the Bank 1 Account to fund the purchase of a residential property in Tulum, Mexico. EVELYN HERRERA purchased the Tulum property to conceal the fraud proceeds.

xxviii. Shortly after the payment suspension letter was issued on August 11, 2022, which notified EVELYN HERRERA that CMS would no longer make any payments on Medicare claims, HERRERA swiftly withdrew large amounts of cash from the Bank 1 Account and transferred some of the funds to benefit herself and members of her family.

xxix. Specifically, on or about August 12, 2022, EVELYN HERRERA went to three different Bank 1 locations in Florida. HERRERA withdrew $20,000 in cash at each location for a total of $60,000 in a single day from the Bank 1 Account. 

xxx. Shortly thereafter, on or about August 15, 2022, EVELYN HERRERA withdrew $100,000 in cash from the Bank 1 Account.

xxxi. In addition to withdrawing cash, EVELYN HERRERA transferred approximately $300,000 from the Bank 1 Account to members of her family between on or about August 16, 2022, August 31, 2022, and September 3, 2022.

h. **Summary of Kickback Conspiracy**

xix. In summary, from in or around July 2021 and continuing through in or around October 2022, EVELYN HERRERA admits and agrees that she did knowingly and intentionally pay health care kickbacks to Company-1, in violation

of 18 U.S.C. § 371, 42 U.S.C. §§ 1320a-7(b)(1), and 1320a-7b(b)(2).

xx. EVELYN HERRERA further admits and agrees that any and all of the claims submitted by Merida to Medicare and CHAMPVA from in and around July 2021 and continuing through or around August 2022, for beneficiaries in the District of Vermont and elsewhere, were induced by kickback payments that HERRERA made to Company-1.

5. EVELYN HERRERA understands that it is a condition of this agreement that she refrain from committing any further crimes, whether federal, state or local, and that if on release she will abide by all conditions of release.

6. EVELYN HERRERA acknowledges that she understands the nature of the charges to which she will plead guilty and the possible penalties. She also acknowledges that she has the following rights: the right to persist in a plea of not guilty; the right to a jury trial; the right to be represented by counsel and if necessary have the court appoint counsel at trial and at every other stage of the proceeding; the right at trial to confront and cross-examine adverse witnesses; the right to be protected from compelled self-incrimination; and the right to testify and present evidence and to compel the attendance of witnesses. She understands that by pleading guilty, she will waive these rights. She also understands that if her guilty plea is accepted by the Court, there will be no trial and the question of guilt will be resolved; all that will remain will be the Court's imposition of sentence. 

7. EVELYN HERRERA fully understands that she may not withdraw her plea because the Court declines to follow any recommendation, motion or stipulation of the parties to this agreement, other than an agreement between the parties pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The United States specifically reserves the right to allocute at sentencing.

There shall be no limit on the information the United States may present to the Court and the Probation Office relevant to sentencing and no limit (except as otherwise provided in this agreement) on the positions the United States may take at sentencing. Both parties are free to move for a departure under the Guidelines and to argue for a sentence outside of the advisory sentencing range, except as otherwise set forth in this agreement. The United States also reserves the right to correct any misstatement of fact made during the sentencing process, to oppose any motion to withdraw a plea of guilty, and to support on appeal any decisions of the sentencing Court whether in agreement or in conflict with recommendations and stipulations of the parties.

8. EVELYN HERRERA fully understands that any estimates or predictions relative to the Guidelines calculations are not binding upon the Court. EVELYN HERRERA understands her criminal history could impact both the offense level and the criminal history category applicable to her Guideline calculation. She fully understands that the Guidelines are advisory and that the Court can consider any and all information that it deems relevant to the sentencing determination. She acknowledges that in the event that any estimates or predictions by her attorney (or anyone else) are erroneous, those erroneous predictions will not provide grounds for withdrawal of her plea of guilty, modification of her sentence, or for appellate or post-conviction relief. 

9. Upon demand, EVELYN HERRERA shall furnish the United States Attorney's Office a personal financial statement and supporting documents relevant to the ability to satisfy any fine or restitution that may be imposed in this case. EVELYN HERRERA expressly authorizes the United States Attorney's Office to obtain a credit report on her at any time before or after sentencing in order to evaluate her ability to satisfy any financial obligation imposed by the Court. If the court orders restitution and/or a fine due and payable immediately, EVELYN HERRERA

agrees that the U.S. Attorney's Office is not precluded from pursuing any other means by which to satisfy her full and immediately enforceable financial obligation. EVELYN HERRERA understands that she has a continuing obligation to pay in full as soon as possible any financial obligation imposed by the Court.

10. EVELYN HERRERA agrees to provide the Clerk's office, at the time this plea agreement is executed, a bank cashier's check, certified check, or postal money order payable to the Clerk, United States District Court, in payment for the mandatory special assessment of $100 for which she will be responsible when sentenced. She understands and agrees that, if she fails to pay the special assessment in full prior to sentencing, the sentencing recommendation obligations of the United States under this plea agreement will be terminated, and the United States will have the right to recommend that the Court impose any lawful sentence. Under such circumstances, she will have no right to withdraw her plea of guilty.

11. EVELYN HERRERA acknowledges that, under certain circumstances, she is entitled to appeal her conviction and sentence. After consulting with counsel, the defendant agrees that she will not file a direct appeal, or collaterally attack, her conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255. Nor will she pursue such an appeal or collateral attack to challenge the Court's sentence as described in the following terms. The waiver covers the term of imprisonment imposed by the Court if that term does not exceed 37 months. The waiver covers any claim challenging the Court's variance or departure, including the substantive reasonableness of the variance or the Court's explanation for its variance or departure decision. The defendant expressly acknowledges that she is knowingly and intelligently waiving her rights to appeal or collaterally attack her conviction and sentence. Nothing in this waiver of



appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

12.   The United States agrees that in the event that EVELYN HERRERA fully and completely abides by all conditions of this agreement, the United States will:

    a.   move to dismiss the Criminal Complaint (2:25-mj-81-1) at the time of sentencing;

    b.   not file additional federal charges based on the conduct described in the factual stipulations at paragraph 4 and for violations of 18 U.S.C. § 1347, 18 U.S.C. § 1349, or 18 U.S.C. § 1956, from July 2021 through to the date of the signing of this agreement, committed by her in the District of Vermont. This agreement does not prevent the United States from filing charges related to conduct outside the scope of the factual stipulations contained within paragraph 4;

    c.   recommend to the sentencing Court that she be sentenced to a term of imprisonment at the low end of the Sentencing Guidelines range if the final offense level is 24 or above; 

    d.   recommend that she receive a two-point credit for acceptance of responsibility under Guideline § 3E1.1(a), provided that (1) she cooperates truthfully and completely with the Probation Office during the presentence investigation, including truthfully admitting the conduct comprising the offense of conviction and not falsely denying any relevant conduct for which she is accountable under U.S.S.G. § 1B1.3, (2) she abides by the conditions of her release, and (3) provided that no new information comes to the attention of the United States relative to the issue of her receiving credit for acceptance of responsibility; and

11

   e. move for an additional one-point credit for timely acceptance of responsibility, if the offense level (before acceptance) is 16 or greater and she meets the conditions in the subparagraph above.

13. If the United States determines, in its sole discretion, that EVELYN HERRERA has committed any offense after the date of this agreement, has violated any condition of release, or has provided any intentionally false information to Probation, the obligations of the United States in this agreement will be void. The United States will have the right to recommend that the Court impose any sentence authorized by law and will have the right to prosecute her for any other offenses she may have committed in the District of Vermont. EVELYN HERRERA understands and agrees that, under such circumstances, she will have no right to withdraw her previously entered plea of guilty.

14. The parties stipulate and agree that, based on EVELYN HERRERA paying illegal health care kickbacks, her base offense level for violating 18 U.S.C. § 371 is 8 under Section 2B4.1. Because the value of the bribe or improper benefit to be conferred is approximately $2.8 million, the offense level is subject to an additional 16 levels under Section 2B1.1(b)(1)(I). Because EVELYN HERRERA has accepted responsibility, her base offense level should be reduced by three levels under Section 3E1.1. Thus, her total estimated offense level is 21. Because EVELYN HERRERA does not have any criminal history, she may also be eligible for an adjustment under Section 4C1.1. 

15. EVELYN HERRERA acknowledges and consents that any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the charged offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the conspiracy, as described in Paragraph 4 above, may be subject to forfeiture.

16.     The United States and EVELYN HERRERA stipulate and agree that the United States is entitled to forfeiture of a money judgment in this case, with the specific amount to be set by the Court at the time of sentencing. The parties stipulate and agree that the amount subject to forfeiture in this case is approximately $2.8 million, reflecting the amount federal health care benefit programs, specifically Medicare and CHAMPVA, paid to Merida for reimbursement of claims illegally induced by kickbacks.

17.     EVELYN HERRERA agrees that the forfeiture of the money judgment shall not be deemed as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose in addition to forfeiture. The United States agrees that the proceeds from any property forfeited pursuant to this agreement may be subsequently remitted or restored to a victim, and such remission or restoration shall be offset against any restitution order entered or issued by the Court. EVELYN HERRERA understands that remission and restoration of such forfeited assets to victims of the offense is not guaranteed. 

18.     EVELYN HERRERA agrees that by entering into this plea agreement, she voluntarily and knowingly waives any claim she may have that the forfeiture, administrative or judicial, civil or criminal, of the above property, in any way violates any of her rights, including her rights under the Fifth and Eighth Amendments to the United States Constitution, including that such forfeiture, whether preceding or following this criminal prosecution, would constitute double jeopardy, cruel and unusual punishment, an excessive fine, a disproportionate punishment, or a violation of due process. EVELYN HERRERA acknowledges and agrees that she has no constitutional right to a jury trial on the forfeiture of assets, and waives all constitutional, legal, and equitable defenses to the forfeiture of those assets in any proceeding.

19. It is understood and agreed by the parties that should EVELYN HERRERA's plea not be accepted by the Court for whatever reason, or later be withdrawn or vacated, this agreement may be voided at the option of the United States and she may be prosecuted for any and all offenses otherwise permissible. EVELYN HERRERA also agrees that the statute of limitations for all uncharged criminal offenses known to the United States as of the date it signs this plea agreement will be tolled for the entire period of time that elapses between the signing of this agreement and the completion of the period for timely filing a petition under 28 U.S.C. § 2255, or if such petition is filed, the date of any decision by a court to vacate the plea or the conviction.

20. It is further understood that this agreement is limited to the Department of Justice, Criminal Division, Fraud Section and the Office of the United States Attorney for the District of Vermont and cannot bind other federal, state or local prosecuting authorities.



21. EVELYN HERRERA expressly states that she makes this agreement of her own free will, with full knowledge and understanding of the agreement and with the advice and assistance of her counsel, Brooks McArthur, Esq. EVELYN HERRERA further states that her plea of guilty is not the result of any threats or of any promises beyond the provisions of this agreement. Furthermore, EVELYN HERRERA expressly states that she is fully satisfied with the representation provided by her attorney, Brooks McArthur, Esq., and has had full opportunity to consult with her attorney concerning this agreement, concerning the applicability and impact of the Sentencing Guidelines (including, but not limited to, the relevant conduct provisions of Guideline Section 1B1.3), and concerning the potential terms and conditions of supervised release.

22. No agreements have been made by the parties or their counsel other than those

contained herein or in any written agreement supplementing this agreement.

UNITED STATES OF AMERICA

MICHAEL P. DRESCHER
Acting United States Attorney
District of Vermont

LORINDA LARYEA
Acting Chief
United States Department of Justice
Criminal Division, Fraud Section

10/16/25
Date

By: *Sarah W. Rocha*

Sarah W. Rocha
Thomas D. Campbell
Tiffany V. Wynn
Trial Attorneys
U.S. Department of Justice
Criminal Division

09·18·2025
Date

EVELYN HERRERA
Defendant

I have read, fully reviewed and explained this agreement to my client, EVELYN HERRERA. I believe that she understands the agreement and is entering into the agreement voluntarily and knowingly.

9/22/25
Date

Brooks S. McArthur
Gravel & Shea PC
Counsel for the Defendant